IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 JUL 26  A 11: 17

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | | |
|---|---|---|
| MABEL SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-16-206 |
| BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, | * | |
| | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In her one-count Complaint, Plaintiff Mabel Smith alleges that she suffered from retaliation in response to her complaints of age, gender, and national origin discrimination that she raised to her employer, the Board of Education of Prince George's County, Maryland (the "Board"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.* Presently pending before the Court is the Board's Motion to Dismiss. ECF No. 3. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the Board's Motion is denied.

## I.    BACKGROUND[1]

Plaintiff was born in Jamaica, West Indies and has a distinct accent. ECF No. 1 ¶¶ 11–12. She is employed by Prince George's County Public Schools and, as of the time of the events leading up to this case, was a middle school teacher at Kettering Middle School.

---

[1] Unless stated otherwise, for the purpose of this Motion, all facts are taken from Plaintiff's Complaint and are accepted as true.

ECF No. 1 ¶¶ 1, 13. Amin Salaam is the principal of Kettering Middle School, and was Plaintiff's supervisor from 2012 to 2015. *Id.* ¶ 14.

According to the Complaint, Plaintiff has been the recipient of many teaching awards and her job performance ratings have been consistently high, but Salaam "has singled [Plaintiff] out for harsher treatment since he arrived at Kettering Middle School in 2012." *Id.* ¶¶ 10, 15. Specifically, during the 2012–2013 school year, Salaam assigned Plaintiff five classes—more than other teachers were assigned—and as many as sixty students at a time. *Id.* ¶¶ 16–19. Plaintiff was also not given a thirty-minute break for lunch. *Id.* ¶ 18. In September 2012, Plaintiff expressed her concern about being overworked in an email to Salaam and complained to her union. *Id.* ¶¶ 21, 24. Salaam responded by telling Plaintiff, "I'll give you an unsatisfactory, I am the principal and I can do so" and said "[y]ou should be glad that you have a job." *Id.* ¶¶ 25–26.

Plaintiff also alleges that Salaam "frequently came to [her] classroom, as she taught a class, with his IPod in hand" and "would take a seat and glare [at] [Plaintiff] without saying a word." *Id.* ¶ 30. Additionally, according to the Complaint, during the 2014–2015 school year, Salaam occasionally entered Plaintiff's classroom during class and "yell[ed] at her in a menacing tone." *Id.* ¶ 31. This conduct led Plaintiff's students to "express concern that she was in some kind of trouble." *Id.* Plaintiff alleges that she found this behavior to be intimidating. *Id.* ¶ 32.

On several occasions, Salaam commented on Plaintiff's national origin. For instance, Salaam said to Plaintiff, "I know about you Jamaicans. I grew up in New York so I know you people." On another occasion, Salaam told Plaintiff, "I told my wife about you

and I told her I was having a hard time with you" and his wife's response was, "[y]ou know how these Jamaicans are." *Id.* ¶¶ 27–29.

On January 29, 2015, Plaintiff sent a letter to her union representative and to Tricia Hairston, Salaam's supervisor, complaining that Salaam was harassing her on the basis of her age, gender, and national origin. *Id.* ¶ 33. Then, on February 2, 2015, Plaintiff emailed Salaam requesting a meeting to address her grievance with him. *Id.* ¶ 34. On February 3, 2015, Plaintiff emailed Hairston informing her that she had requested a meeting with Salaam, and explaining that, in October 2014, Plaintiff met with her union representative to address the harassment she was facing and noted that she "ended up with panic attacks and stress related symptoms" as a result of Salaam's conduct. *Id.* ¶ 35. Plaintiff further explained that her October 2014 complaint was "partially resolved" but that another meeting was warranted "because . . . Salaam will not stop." *Id.*

On February 4, 2015, during a meeting between Salaam, Plaintiff, and Plaintiff's union representative, Salaam said to Plaintiff:

> I am going to give you a Letter of Reprimand because I am tired of you.
> When things don't go your way you email my supervisor and call in the
> union on me and I am going to put a stop to it today. I have a school to run
> and all these meetings are taking up my time. You feel that you can call in
> the union on me any time you want but this is the last time. I am going to put
> a stop to it once and for all.

*Id.* ¶ 36. Next, on February 27, 2015, Salaam accused Plaintiff of interfering with a security investigation involving a possible fight between two students, based on Plaintiff's claim that she had not seen the fight. Because Plaintiff was assigned to hallway duty at the time of the incident and a security officer claimed she was there, Salaam accused Plaintiff of misleading him. *Id.* ¶ 37. At the time of the altercation, Plaintiff was monitoring students but did not see the altercation. *Id.* ¶¶ 38–39.

3

On March 9, 2015, Plaintiff met with an Employee and Labor Relations attorney regarding her complaints against Salaam and explained that Salaam's harassment was having an adverse effect on her health. *Id.* ¶¶ 41–42. The following day, Salaam followed Plaintiff to her classroom "with an angry expression on his face." *Id.* ¶ 43. During a meeting on March 11, 2015, Salaam yelled at Plaintiff, called her a liar, and accused her of deliberately endangering a child's life. *Id.* ¶ 44. As a result, Plaintiff suffered a medical emergency and was sent to the hospital. On her doctor's advice, Plaintiff went onto extended medical leave for the remainder of the 2014–2015 school year. *Id.* ¶¶ 45–46.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 16, 2015. *Id.* ¶ 48; *see also* ECF No. 3-2. Two days later, on March 18, 2015, Plaintiff received a "Letter of Professional Counseling for Misconduct, Willful Neglect of Duty & Insubordination" from Salaam. The letter indicated that, on February 27, 2015, Plaintiff "decided not to tell the truth to the principal about a student security investigation." ECF No. 1 ¶ 49. On March 25, 2015, Salaam gave Plaintiff an interim job performance rating of "ineffective." *Id.* ¶ 50.

On June 18, 2015, Plaintiff visited the school to attend an award ceremony for her students. When Salaam saw her, he yelled at her in front of students, parents, and colleagues, saying that Plaintiff was not allowed to come in the building while she was out on sick leave, and that if she did not leave, he would have security escort her from the building. *Id.* ¶ 51. The following day, Salaam presented Plaintiff with an annual job performance rating of "ineffective" for the 2014–2015 school year. *Id.* ¶ 52.

The EEOC issued a right-to-sue notice on November 12, 2015, and Plaintiff initiated the present action on January 21, 2016. *See* ECF No. 1 ¶ 6. The Board now moves

to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. ECF No. 3.

## II.     STANDARD OF REVIEW

When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). The factual allegations must be more than "labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See*

*id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

Title VII prohibits employment discrimination based on "race, color, religion, sex,

or national origin," 42 U.S.C. § 2000e-2(a), and its antiretaliation provision serves to

"prevent[] an employer from interfering (through retaliation) with an employee's efforts to

secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405 (2006); 42 U.S.C. § 2000e-3(a). To

properly state a *prima facie* claim of retaliation under Title VII, a plaintiff must

demonstrate three elements: "(1) [s]he engaged in a protected activity, (2) [her] employer

acted adversely against [her], and (3) the protected activity was causally connected to the

adverse action." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013)

(citations omitted). The Board argues that dismissal is warranted because Plaintiff has

failed to allege that she suffered any materially adverse action, and that Plaintiff therefore

cannot satisfy the second element of her *prima facie* case. ECF No. 3 at 1.[2]

Title VII's antiretaliation provision "protects an individual not from all retaliation,

but from retaliation that produces an injury or harm." *Burlington N.*, 548 U.S. at 67. It

"does not protect against 'petty slights, minor annoyances, and simple lack of good

manners' that will normally not deter employees from complaining to the EEOC." *Geist v.*

*Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington N.*, 548

U.S. at 68). The level of "injury or harm" that must result from any retaliatory action is

that which would cause a "reasonable employee" to find "the challenged action materially

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (citation and internal quotation marks omitted). "Materiality is an objective determination, meaning that '[a]cts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities will not suffice.'" *Fordyce v. Prince George's Cty. Md.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) (quoting *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)).

Plaintiff's Complaint identifies two actions that form the primary basis for her claim of retaliation: (1) the Letter of Professional Counseling Salaam issued to Plaintiff on March 18, 2015, two days after she filed her charge of discrimination with the EEOC, ECF No. 1 ¶ 49, and (2) Salaam's ratings of Plaintiff as "ineffective" in the interim and annual job performance reviews issued on March 25, 2015 and June 19, 2015, respectively, *id.* ¶¶ 50, 52. Plaintiff suggests that these actions were efforts undertaken by Salaam to "paper" her file with negative reports and reprimands.[3] ECF No. 8 at 11.

Notably, as the Board highlights in its Motion to Dismiss, the Complaint does not allege that the Letter of Professional Counseling or negative performance reviews had an "'adverse effect on the terms, conditions, or benefits of employment.'" ECF No. 3-1 at 10 (quoting *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)). Despite the Board's argument to the contrary, however, this is not fatal to Plaintiff's claim.

---

[3] Plaintiff also argues in opposition to the Board's Motion that she has adequately alleged that Salaam's conduct created a retaliatory hostile work environment. ECF No. 8 at 8–10. Courts within this district have recognized the possibility of such a claim, *see Thorn v. Sebelius*, 766 F. Supp. 2d 585, 600 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012), but here, the Complaint does not include a claim of retaliatory hostile work environment. *See* ECF No. 1. If Plaintiff wishes to plead such a claim, she will need to file the appropriate motion seeking leave to amend her Complaint. *See Jeffries v. Wal-Mart Stores E., LP*, No. GJH-15-473, 2016 WL 430479, at *4 (D. Md. Feb. 3, 2016) (quoting *Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 748 n. 4 (D. Md. 1997) ("[A] plaintiff 'cannot, through the use of motion briefs, amend the complaint.'").

7

Indeed, the standard the Board proposes, which is consistent with the standard that applies in a substantive discrimination claim, is precisely what the United States Supreme Court rejected in *Burlington Northern*. *See Burlington N.*, 548 U.S. at 67 ("Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); *see also Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (citations and internal quotation marks omitted) (noting that the standard for alleging a claim of retaliation is "less 'strenuous' than the standard in a discrimination claim, because [t]he adverse employment action in a retaliation case need not affect an employee's terms or conditions of employment."); *Hinton v. Virginia Union Univ.*, --- F. Supp. 3d ---, 2016 WL 2621967, at *13 (E.D. Va. May 5, 2016) (emphasis in original) (internal citations and quotation marks omitted) ("Under [*Burlington Northern*], effect on terms or conditions of employment can certainly be a factor in the fact-based determination of material adversity, . . . however, effect on terms or conditions of employment is no longer *necessary* to state actionable misconduct in a retaliation claim.").[4] If Title VII's antiretaliation provision limited recovery to retaliatory conduct effecting the terms, conditions, or benefits of employment, it "would not deter the many forms that effective retaliation can take." *Burlington N.*, 548 U.S. at 63. And, because "Title VII depends for its enforcement upon the cooperation of employees who are willing

---

[4] In support of its argument that a plaintiff must allege an adverse employment action that impacted the terms, conditions, or benefits of employment in order to state a retaliation claim, the Board relies on *Adams v. Upper Chesapeake Med. Ctr., Inc.*, No. AMD 08-346, 2009 WL 997103, at *4 (D. Md. Apr. 14, 2009), which, after citing the *Burlington Northern* standard, noted that "[a]dverse employment actions generally impact one's job title, salary, benefits, hours, or some other material aspect of one's employment." The Court disagrees that *Adams* supports the proposition that a proper retaliation claim *requires* an allegation that an employee's "job title, salary, benefits, [or] hours" were impacted by the retaliatory conduct. That an adverse action *generally* impacts those terms or conditions of employment does not mean that, in order to survive a motion to dismiss, a plaintiff *must* allege that such terms and conditions of employment were impacted.

to file complaints and act as witnesses, . . . . [i]nterpreting the antiretaliation provision to provide broad protection" helps to ensure that "employees [feel] free to approach officials with their grievances." *Id.* at 67 (citation and internal quotation marks omitted).

Here, the Letter of Professional Counseling and Salaam's subsequent issuance of "ineffective" performance ratings for Plaintiff, if true, are sufficiently material to constitute actionable retaliation. *See, e.g., Belyakov v. Leavitt*, 308 F. App'x 720, 729 (4th Cir. 2009) ("Issuing an official reprimand and declining to renew [plaintiff's] appointment are adverse employment actions . . . ."); *Howerton v. Bd. of Educ. of Prince George's Cty.*, No. CIV.A. TDC-14-0242, 2015 WL 4994536, at *18 (D. Md. Aug. 19, 2015) ("[R]eprimand letters placed in an employee's personnel file could constitute materially adverse employment actions."); *Seaton v. City of N. Charleston*, No. 10-03186-DCN, 2013 WL 6859050, at *7 (D.S.C. Dec. 30, 2013) ("[R]epeated written reprimands could deter a reasonable worker from making or supporting a charge of discrimination."). Such actions constitute more than "a mere inconvenience" and could plausibly cause "harm to [Plaintiff's] future employment prospects," *Fordyce*, 43 F. Supp. 3d at 552, such that a "reasonable employee . . . might have [been] dissuaded . . . from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 68 (citation and internal quotation marks omitted), had she known she would have been subjected to such disciplinary actions.

The Court is aware that in several cases within this district, courts have concluded that the issuance of letters of reprimand or verbal warnings regarding performance issues were not found to be "materially adverse" for purposes of a claim of retaliation. *See, e.g., Wonasue*, 984 F. Supp. 2d at 492 (quoting *Rock v. McHugh*, 819 F.Supp.2d 456, 470–71

(D. Md. 2011)) ("Even with this lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; . . . issuing a personal improvement plan, an 'Attendance Warning,' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'"); *see also Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 550 (D. Md. 2015); *Lee v. Safeway, Inc.*, No. CV RDB-13-3476, 2016 WL 3551828, at \*4 (D. Md. June 30, 2016); *Mackall v. Colvin*, No. CIV.A. ELH-12-1153, 2015 WL 412922, at \*25 (D. Md. Jan. 29, 2015); *Muldrow v. Blank*, No. PWG-13-1200, 2014 WL 938475, at \*10 (D. Md. Mar. 10, 2014). In supporting that conclusion, however, many, if not all, of these cases rely on decisions that only addressed claims of *substantive discrimination*—not claims of retaliation. *See, e.g., Wonasue*, 984 F. Supp. 2d at 492 (relying on *Rock*, 819 F.Supp.2d at 470–71). Because Title VII's substantive provision is not coterminous with its antiretaliation provision, *Burlington N.*, 548 U.S. at 67, the conclusion that attendance warnings, verbal reprimands, proposed terminations, and the like are not "adverse employment actions" sufficient to support a disparate impact claim of discrimination is unhelpful to determining whether those same actions would be materially adverse to support a retaliation claim. *Cf. Hinton*, 2016 WL 2621967, at \*15–17 (noting the perpetual "misstatement of law" within the Fourth Circuit wherein courts apply the more restrictive standard used in substantive discrimination provision as an element of Title VII retaliation claims).

To be clear, not every performance evaluation or vague charge of poor performance will support a finding of a materially adverse action in a retaliation claim. *See Nasis-Parsons v. Wayne*, No. 4:05-36, 2006 WL 1555913, at \*5 (E.D. Va. June 1, 2006) (concluding that performance evaluation where plaintiff received multiple high ratings and

10

one mediocre rating of "slightly above fully successful," but did not receive monetary

bonus, not sufficiently adverse to state retaliation claim), *aff'd sub nom. Parsons v. Wynne,*

221 F. App'x 197 (4th Cir. 2007) (affirming under *Burlington Northern* standard)[5];

*Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *11

(D. Md. Oct. 14, 2014) (concluding that single sentence in complaint alleging that plaintiff

"was accused of alleged performance based deficiencies" after filing a charge of

discrimination was insufficient to survive motion to dismiss).[6] But as the Supreme Court

noted in *Burlington Northern*, in assessing a retaliation claim, "[c]ontext matters. 'The real

social impact of workplace behavior often depends on a constellation of surrounding

circumstances, expectations, and relationships which are not fully captured by a simple

recitation of the words used or the physical acts performed.'" *Burlington N.*, 548 U.S. at

69 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82, 118 S. Ct. 998

(1998)); *see also Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015)

("The analysis [of whether conduct is materially adverse] depends on the particular

circumstances of the case."); *Howerton*, 2015 WL 4994536, at *18 (citation and internal

quotation marks omitted) ("[A]lthough not every performance evaluation would qualify as

materially adverse, a reasonable jury could conclude that the precipitous change in [a

plaintiff's] ratings" is sufficient to survive summary judgment).

---

[5] In *Parsons*, an unpublished opinion, the Fourth Circuit stated: "Neither [the plaintiff's] May 2002 performance evaluation nor her removal from the alternate work schedule would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 221 F. App'x at 198 (quoting *Burlington N.*, 548 U.S. at 68). Other courts have similarly found that a negative performance review was not a materially adverse action. *See, e.g., Simmington v. Gates*, No. CIVA DKC 08-3169, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010); *Toulan v. DAP Products, Inc.*, No. CIV.CCB-05-2254, 2007 WL 172522, at *9 (D. Md. Jan. 17, 2007), *aff'd sub nom. Toulan v. DAP, Inc.*, 271 F. App'x 312 (4th Cir. 2008). But the Court does not read those cases as establishing a blanket rule that negative performance reviews *cannot* be considered materially adverse actions. Adopting any such blanket rule would ignore the Supreme Court's admonition in *Burlington Northern* that "[c]ontext matters" when considering whether a particular action on the part of an employer is sufficient to state a claim of retaliation. *See Burlington N.*, 548 U.S. at 69.

[6] It should also be clear that the materially adverse action must be causally connected to a protected activity.

11

Even assuming certain allegations in Plaintiff's Complaint—such as that Salaam

yelled at Plaintiff, ECF No. 1 ¶ 44, followed her with an "angry expression on his face,"

*id.* ¶ 43, or *threatened* to issue a reprimand, *id.* ¶ 36—may alone be insufficient to

withstand a motion to dismiss, the Complaint nevertheless contains sufficient factual

matter, taken together, to state a plausible claim to relief. *See Iqbal*, 556 U.S. at 678.

Although Plaintiff did not allege in the Complaint that the Letter of Professional

Counseling or negative performance evaluations in fact caused any long-term harm to her

employment with the Board, at the motion to dismiss phase, the Court is required to draw

all reasonable inferences in the Plaintiff's favor.[7] *E.I. du Pont*, 637 F.3d at 440. In the Court's

view, a letter of reprimand and negative performance evaluation added to an employee's file are

actions that can be sufficiently adverse such that a reasonable employee would think twice before

complaining of discrimination in the workplace. Here, according to the Complaint, this is

precisely what was intended as Salaam had previously threatened to give Plaintiff a letter of

reprimand because he was "going to put a stop to [Plaintiff reporting his conduct] once and for

all." ECF No. 1 ¶ 36. It is difficult to imagine how one could find that a reasonable worker

would not be dissuaded by a particular action when her employer has allegedly stated that

was the purpose of the action being taken. Thus, because Plaintiff has adequately alleged

that Salaam engaged in conduct which "well might have dissuaded a reasonable worker

from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 68

---

[7] The Court notes that, in her response in opposition to the Board's Motion to Dismiss, Plaintiff argued new facts not alleged in the Complaint, namely, that if a tenured employee receives a negative performance evaluation, she is placed on probation, and may eventually be terminated. *See* ECF No. 8 at 12. But as previously noted, "[a] plaintiff cannot, through the use of motion briefs, amend the complaint." *Jeffries*, 2016 WL 430479, at *4 (citation and internal quotation marks omitted). Though this information may have bolstered Plaintiff's claims, the Court notes that it reached its conclusion without reliance on these additional facts.

(citation and internal quotation marks omitted), the Board's Motion to Dismiss must be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Board's Motion to Dismiss, ECF No. 3, is **DENIED**. The Board will be directed to file an Answer to Plaintiff's Complaint within the time period set forth in an accompanying Order.

Dated: _July  26  , 2016_

GEORGE J. HAZEL
United States District Judge