

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

MABEL SMITH,                              *

    Plaintiff,                         *

v.                                        *      Case No.: GJH-16-206

BOARD OF EDUCATION OF PRINCE              *
GEORGE'S COUNTY,
                                          *
    Defendant.
                                          *
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In her one-count Complaint, Plaintiff Mabel Smith alleges that she suffered retaliation in response to her complaints of age, gender, and national origin discrimination that she raised to her employer, the Board of Education of Prince George's County, Maryland (the "Board" or "Defendant"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 *et seq.* Presently pending before the Court is the Board's Motion for Summary Judgment, ECF No. 26. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the Board's Motion is granted.

### I.    BACKGROUND[1]

Plaintiff is employed by the Board as a teacher in the Prince George's County school system and was assigned to Kettering Middle School as a classroom teacher for the

---

[1] Unless stated otherwise, the Court relies on evidence that is undisputed and views the evidence in the light most favorable to the non-movant. Notably, however, in her Opposition, Plaintiff cites extensively to the Complaint but not to evidence in the record. *See Cambridge Capital Group v. Pill*, 20 F. App'x 121, 124–25 (4th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Allegations contained in a complaint are not evidence, and cannot defeat a motion for summary judgment.")).

2005-2006 through 2014-2015 school years. ECF No. 26-12 at 6, 2.[2] Amin Salaam is Principal of Kettering Middle School and served as Plaintiff's immediate supervisor for the 2012-2013 through 2014-2015 school years. ECF No. 26-13 at 2. On February 27, 2015, Salaam informed Plaintiff of an impending disciplinary meeting related to Plaintiff's observation of, and role in, diffusing an altercation that occurred between two students in front of Plaintiff's classroom earlier that day. ECF No. 26-8 at 1.[3] According to Salaam, the meeting was necessary because Plaintiff misled Salaam during his investigation into the altercation by erroneously informing him that she "did not see anything." *Id.* Following notification of this meeting, Plaintiff sent an email to Dr. Kevin Maxwell, Chief Executive Officer of Prince George's County Public Schools, on March 3, 2015, requesting that he review Salaam's conduct, and that Salaam harassed her, bullied her, and demeaned her character. ECF No. 26-8 at 1–6.

Amana Simmons, the Board's Equal Opportunity Advisor, acknowledged receipt of Plaintiff's email to Maxwell and informed Plaintiff that the Board would treat it as a complaint of discrimination and/or harassment pursuant to the Board's Administrative Procedure 4170, ECF No. 26-11 at 62–72. *See* ECF No. 26-11 at 73. Simmons and Plaintiff met on March 3, 2015 to discuss Plaintiff's concerns. Following this meeting, Salaam held the aforementioned disciplinary meeting on March 11, 2015 with Plaintiff, Kettering Vice Principal Secoya Muschett, and Jimalatice Thomas, Plaintiff's union representative. ECF No. 26-2 at 4. During the meeting, Plaintiff denied that she was aware of the altercation that occurred between two

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] Although Plaintiff provides no evidentiary support, for the sake of context, the Court notes that in her Complaint she alleged that the disciplinary meeting followed earlier complaints by her to the union regarding harassing conduct by Salaam. ECF No. 1 ¶¶ 33–35. Specifically, she alleged "harsher treatment" from Salaam in the form of an increased work-load, derogatory comments about her Jamaican origin, and intimidating behavior. ECF No. 1 ¶¶ 15–32.

2

students in front of her classroom on February 27. *Id.* After Salaam played recordings taken from a security camera showing Plaintiff breaking up the subject altercation, Plaintiff left the meeting to seek medical attention. *Id.*; *see also* ECF No. 26-10 (security camera recording). Salaam then informed Thomas and Muschett that he would issue a "Letter of Professional Counseling for Misconduct, Willful Neglect of Duty & Insubordination" (the "Letter") to Plaintiff for her conduct following the altercation, ECF No. 26-2 at 4, and issued the Letter later that day. ECF No. 26-2 at 37–39. While the Letter primarily discussed Plaintiff's conduct related to this altercation, Salaam also referenced two prior incidents where Plaintiff allegedly inappropriately yelled at Salaam in front of students and staff on September 11 and December 10, 2014. *Id.*

Following the disciplinary meeting, Plaintiff remained absent from work on extended medical leave through the end of the 2014-2015 school year, but her salary and benefits remained unchanged. ECF No. 26-12 at 23–25, 29. On March 16, 2015, Plaintiff filed a Charge of Discrimination with the EEOC, alleging national origin and age discrimination and retaliation. ECF No. 26-3. Thereafter, on March 25, 2015, Plaintiff received a report from an observation conducted by Salaam, stating that her performance was "unsatisfactory." ECF No. 28-3. Plaintiff also received an evaluation for the 2014-2015 school year with an overall score of 49.57, corresponding to an "ineffective" rating. ECF No. 28-4. Subsequently, the score was increased to 75.29, corresponding to an "effective" rating. ECF No. 26-2 at 24. Plaintiff initiated the subject action on January 21, 2016, bringing one claim, "Title VII – Retaliation." ECF No. 1. On July 26, 2016, the Court denied Defendant's Motion to Dismiss, ECF No. 3. *See* ECF No. 11. Following completion of discovery, Defendant now moves for summary judgment. ECF No. 26.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (1986) (emphasis in original). Thus, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original).

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the non-moving party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues on which the non-moving party has the burden of proof, it is her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

4

## III. DISCUSSION

Plaintiff's Complaint identifies two actions that form the primary basis for her claim of retaliation under Title VII: (1) the March 11, 2015 Letter of Professional Counseling received by Plaintiff on March 18, 2015, ECF No. 1 ¶ 49, and (2) Salaam's ratings of Plaintiff as "ineffective" in interim and annual job performance reviews issued on March 25, 2015 and June 19, 2015, respectively, *id.* ¶¶ 50, 52.[4] Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and its anti-retaliation provision serves to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63; *see also* 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must demonstrate three elements: "(1) [s]he engaged in a protected activity, (2) [her] employer acted adversely against [her], and (3) the protected activity was causally connected to the adverse action." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citations omitted). Once a plaintiff demonstrates a *prima facie* claim, the burden shifts to the employer to show that there was a legitimate non-retaliatory reason for the adverse action. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citing the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[4] In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff repeats a number of allegations set forth in her Complaint that Salaam harassed her and made derogatory comments related to Plaintiff's Jamaican origin. ECF No. 24-1 at 2–5. As Plaintiff has not amended her Complaint to raise a claim of discrimination under Title VII, the Court will only consider evidence related to her claim of retaliation. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) ("Retaliatory conduct, by its very nature, must come *after* the protected activity.") (emphasis in original) (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

5

(1973)). Thereafter, the burden shifts back to the plaintiff to rebut the employer's explanation and show that it was merely a pretext for discrimination. *Id.*

Defendant argues that Plaintiff cannot establish that there was an adverse action, and that even if there was such an action, it was not causally related to a protected activity. As explained by the Court in resolving Defendant's earlier Motion to Dismiss, Title VII's protections against discrimination and retaliation are not coterminous. *Smith v. Board of Ed. Of Price George's Cnty.*, No. GJH-16-206, 2016 WL 4014563, at *4 (D. Md. July 26, 2016) (citing *Burlington N.*, 548 U.S. at 67). While a plaintiff alleging discrimination must show that she was subject to an adverse employment action that altered the terms or conditions of employment, a plaintiff alleging retaliation need only show that a reasonable employee would find "the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (citation and internal quotation marks omitted); *see also Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 827 (E.D. Va. 2016) ("Under [*Burlington Northern*], effect on terms or conditions of employment can certainly be a factor in the fact-based determination of material adversity, . . . however, effect on terms or conditions of employment is no longer *necessary* to state actionable misconduct in a retaliation claim.") (internal citations and quotation marks omitted) (emphasis in original). The Court addresses each of the alleged retaliatory actions in turn.

## A. Letter of Professional Counseling[5]

Defendant argues that the Letter of Professional Counseling was not an adverse action, or, alternatively, that Defendant has articulated a legitimate, non-discriminatory reason for issuing the Letter. The Letter was effectively a reprimand. *See* ECF No. 26-2 at 37–39. While reprimands suggestive of an impact to the terms and conditions of employment may be the subject of a retaliation claim, *see Howerton v. Bd. of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at * 18 (D. Md. Aug 19, 2015), courts have found that reprimands without collateral consequences do not dissuade a reasonable employee from engaging in protected activity. *Hinton*, 185 F. Supp. 3d at 832; *see also id.* at 833 (citing *Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 73 (1st Cir. 2008) ("a criticism that carries with it no consequences is not materially adverse and therefore not actionable")). Here, the Letter may not have altered the terms or conditions of Plaintiff's employment, but the Letter suggested that Plaintiff's failure to improve her performance could result in termination. ECF No. 26-2 at 37–39 ("Over the next 60 days, you must show immediate improvement in your conduct . . . . Failure to do so may result in further discipline up to and including termination of employment"). Therefore, this reprimand is highly suggestive of collateral consequences, reaching beyond the "non-actionable snubbing, antipathy, and petty slights," *Hinton*, 185 F. Supp. 3d at 832, that otherwise do not constitute an adverse action.

---

[5] Plaintiff incorrectly states that the Letter of Professional Counseling "was dated just two (2) days after Plaintiff Smith filed a Charge of Discrimination with EEOC on March 16, 2015." ECF No. 27-1 at 11. While Plaintiff may have received the letter on March 18, 2015, see ECF No. 1 ¶ 49, the record indicates that Salaam issued the letter on March 11, 2015. ECF No. 28-2 ¶ 19. Regardless, Defendant does not dispute that Plaintiff engaged in a protected activity prior to receiving the Letter, and the Court will therefore assume that Plaintiff satisfied the first element of a *prima facie* claim for retaliation.

7

However, even if the Letter of Professional Counseling was an adverse action, the evidence unequivocally demonstrates that Salaam issued the Letter based on Plaintiff's refusal to cooperate in his inquiry into the altercation between two students on February 27, 2015. ECF No. 26-2 at 37. Plaintiff does not dispute Salaam's testimony that prior to being shown the videotape demonstrating her involvement, "Ms. Smith denied her awareness or involvement in the incident." *Id.* at 4. In fact, Plaintiff repeats an assertion made in her Complaint that she "stands by her claim that she did not observe any kind of altercation between the students." ECF No. 27-1 at 5 (citing ECF No. 1 ¶ 38). Yet the record shows that such an assertion is, at the very least, misleading. Contrary to Plaintiff's assertions, security recordings of the subject altercation show that Plaintiff broke up the altercation herself. ECF No. 26-10. Moreover, as part of the correspondence sent to Dr. Maxwell on March 3, 2015, Plaintiff admitted that after she broke up the altercation, Salaam asked her if she saw "what happened," she replied that "I did not see anything." ECF No. 26-8 at 3. Plaintiff's failure to assist Salaam in investigating the altercation, as made clear in the Letter itself, demonstrates both that the Letter was not causally related to her protected activity and that even if Plaintiff could establish a *prima facie* case of retaliation, there was a legitimate, non-discriminatory reason for the letter.[6]

### B. "Ineffective" Performance Ratings

Plaintiff also alleges that Salaam gave her an interim "ineffective" performance rating on March 25, 2015 and an annual "ineffective" performance rating on July 19, 2015 for the 2014-2015 school year. ECF No. 1 ¶¶ 50. 52. In denying Defendant's Motion to

---

[6] Additionally, Plaintiff does not suggest that the Letter was issued as a pretext for retaliation. While Plaintiff repeats an assertion from her Complaint that on February 4, 2015, weeks before the subject altercation, Salaam threatened to issue Plaintiff a Letter of Reprimand in response to her complaint to the union, ECF No. 27-1 (citing ECF No. 1 ¶ 36), Plaintiff fails to provide any evidence suggesting that Salaam made such a statement. Plaintiff alleges that Thomas, her union representative, was present when Salaam made this threat but offers no supporting deposition testimony or affidavit from Thomas. *See Anderson*, 477 U.S. at 249 (the nonmoving party cannot defeat a properly supported summary judgment motion without presenting "significant probative evidence").

8

Dismiss, the Court stated that these allegations, if true, are sufficiently material to constitute actionable retaliation. ECF No. 10 at 9. However, the uncontroverted record indicates that Plaintiff did not receive "ineffective" performance ratings as alleged.

First, Plaintiff did not receive an interim performance rating at all; the March 25, 2015 review referenced in the Complaint consisted of Observation Notes provided by Salaam.[7] ECF No. 31 ¶ 4. The Observation Notes were part of Salaam's continuous review of all teachers following classroom observation and used as a means of providing Plaintiff with specific feedback to assist her in improving her performance in one of the four areas in which she would be evaluated at the end of the year. *Id.* Notably, the Observation Notes template indicates that they "should not be used as a mid-cycle indicator of performance, a formative indicator, or be used to estimate projected end-of-cycle values, as computation will be incomplete and may be misleading until all data is available." ECF No. 28-3 at 2. "[N]ot every performance evaluation or vague charge of poor performance will support a finding of materially adverse action in a retaliation claim," *Smith*, 2016 WL 4014563, at *5, and there is no basis to conclude that the March 25, 2015 Observation Notes would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See, e.g., Zackrie v. Lockheed Martin, Corp.*, No. RWT-04-1864, 2006 WL 2849767, at *8 (D. Md. Oct. 2, 2006) (finding that an employer's action of documenting areas for the plaintiff's improvement was not materially adverse under *Burlington*).

Second, Plaintiff received a final performance rating of "effective" on her 2014-2015 school year evaluation. ECF No. 26-2 at 32–35; *see also* ECF No. 26-12 at 30–31 (Plaintiff's deposition testimony acknowledging the same). Like all other teachers, half of

---

[7] The Observation Notes only state "Unsatisfactory – The teacher purposefully resists discussing performance with supervisors or colleagues." ECF No. 28-3 at 1.

9

Plaintiff's performance rating consisted of a Professional Growth Score based on a rating from Salaam as Plaintiff's direct supervisor. ECF No. 31 ¶ 7. The other half consisted of a Student Growth Measures Score based on empirical data that reported the progress of her students ("Student Learning Outcomes" or "SLOs"). *Id.* ¶ 10. Plaintiff's final "effective" performance rating included a Professional Growth Score of 40.67 and a Student Growth Measures Score of 34.62. *Id.* While Plaintiff did initially receive an "ineffective" performance rating for the 2014-2015 school year, the rating was due to Plaintiff receiving a Student Growth Measures score of 8.90 as a result of incomplete data caused by Plaintiff leaving on extended medical leave prior to submitting her SLOs. ECF No. 28-4; ECF No. 31 ¶ 12. Contrary to Plaintiff's assertions that Salaam gave her an "ineffective" rating in retaliation for her protected activity, Salaam himself recognized the error in Plaintiff's Student Growth Measures score and emailed his immediate supervisor, Dr. Tricia Hairston, to request a correction. ECF No. 31 at 14. Moreover, the portion of Plaintiff's evaluation subject to Salaam's discretion was never decreased or alleged to be unfavorable. As previously noted by the Court, "context matters when considering whether a particular action on the part of an employer is sufficient to state a claim of retaliation," *Smith*, 2016 WL 4014563, at *5 n. 5 (citing *Burlington N.*, 548 U.S. at 69). While Plaintiff offers allegations that "she had to file several appeals to get this matter addressed," ECF No. 24-1 at 13, the record provides no support for that claim and otherwise makes clear that Plaintiff's initial "ineffective" performance rating was ultimately corrected and not a materially adverse action sufficient to sustain her claim of retaliation.

Thus, because Plaintiff is not able to establish a *prima facie* case of retaliation, summary judgment in favor of Defendant is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Board's Motion to for Summary Judgment, ECF No. 26, is will be granted. A separate order follows.

Dated: December 8, 2017

/s/ George J. Hazel
GEORGE J. HAZEL
United States District Judge

11